USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-7-14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DOROTA VON MAACK,

                Plaintiff,            14-cv-4360 (PKC)

    -against-              MEMORANDUM
                                     AND ORDER

1199SEIU UNITED HEALTHCARE WORKERS
EAST,

                Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Dorota Von Maack, proceeding pro se, brings this action against her union, 1199SEIU United Healthcare Workers East ("1199" or "the Union"), which she styles "1199 Local SEIU."[1] She alleges violations of a host of federal and state laws, but the essence of her 77-page complaint is that 1199 violated its duty of fair representation by conspiring with her former employer to have her terminated and failing properly to grieve her termination. She also claims that 1199 discriminated against her on the basis of her race. 1199 now moves to dismiss Von Maack's complaint. For the following reasons, the motion is granted and the complaint dismissed.

BACKGROUND

        The following facts are taken from the complaint and its 84 exhibits, and are accepted as true for the purposes of this motion. From November 2004 to August 11, 2011, Von Maack, a long-standing member of 1199, was employed as a pharmacist by Wyckoff Heights

---

[1] The caption has been amended to reflect the defendant's correct name.

Mailed to Plaintiff 11/7/14

Medical Center ("Wyckoff"), in Brooklyn. (Compl. ¶¶ 9.1, 13.) Early on, Von Maack began to feel discriminated against by her supervisor, Joseph Rumore, Wyckoff's pharmacy director. For instance, she was assigned physically demanding and hazardous work without the help usually given to Rumore's "favorite male employees," (Compl. ¶¶ 13.2, 15.2), required to work five days a week while others worked only four (Compl. ¶ 13.1), not allowed to take as much vacation as other employees (Compl. ¶ 15.6), and required to cover for Rumore's favorite employees while they left their posts for coffee breaks or to visit family members who worked on other floors (Compl. ¶¶ 15.7, 17). She was also denied benefits and bonuses she was entitled to under the Union's collective bargaining agreement ("CBA"). (Compl. ¶ 15.1.) Finally, she alleges that prolonged exposure to chemotherapy chemicals in the pharmacy's ill-ventilated sterile room caused her to contract lung disease. (Compl. ¶ 9.10.) She wrote multiple letters to 1199 and Wyckoff officials about these issues, and raised them in union and departmental meetings, but to no avail. (Compl. ¶ 16.)

In June 2009, after returning from a four-day hospitalization for her lung disease, Rumore (who suggested that her absence was due to a ski vacation) scheduled Von Maack "to work as the only pharmacist on duty in the whole hospital." (Compl. ¶ 20.) She reported the incident in the pharmacy "communication book." (Id.) This displeased Rumore, who requested a July 16 meeting with her. (Id.) Von Maack was scheduled to prepare chemotherapy medications at the requested time for the meeting and refused to "abandon[]" her patients. (Id.) On July 17, she was given a disciplinary notice and suspended for three days. (Id.; Compl. Ex. 20.) On July 21, when she reported back for work, Rumore, "apparently in order to intimidate [her] even more," ordered a security guard to escort her off the premises. (Compl. ¶ 21.) Von Maack filed a grievance request letter with 1199, but 1199 did not initiate a grievance. (Id.) In

early August, six of Von Maack's coworkers sent two letters to Wyckoff's director of human resources protesting Von Maack's ejection from the hospital, but these went unanswered. (Compl. ¶¶ 23–24; Compl. Exs. 22, 23.)

In spring 2010, Von Maack, in order to draw attention to what she considered to be the hazardous conditions in the pharmacy sterile room and to combat what she saw as the current delegate's preferential treatment of certain employees, attempted to put her name on the ballot for union delegate. (Compl. ¶ 27.) Despite obtaining the number of required signatures and being assured that she had met all the requirements for candidacy, she was never listed on the ballot. (Compl. ¶¶ 27–28.)

In November and December 2010, Von Maack and a coworker met with 1199 officials at the Union's headquarters and managed to schedule a meeting at the pharmacy with Coraminita Mahr, a vice-president of 1199. (Compl. ¶¶ 33, 35.) The meeting took place on February 10, 2011. (Compl. ¶ 37.) A number of issues were discussed, including differential treatment of employees, bonuses, the distribution of holidays, and health conditions in the sterile room, but the meeting led to no improvements. (Id.)

On July 5, 2011, Von Maack was again suspended, this time for five days, and warned that similar conduct in the future would result in her termination. (Compl. ¶ 38; Compl. Ex. 34.) The suspension resulted from three incidents in May and June, with respect to which Von Maack maintains she did nothing wrong. (Compl. Ex. 36.) Von Maack describes one of these incidents as an "entrapment," in that Rumore reprimanded her for failing to follow a policy that Rumore only implemented after the fact. (Compl. ¶ 38.) A grievance process was initiated, and a formal grievance meeting took place on August 2. (Compl. ¶ 45.) According to Von Maack, though, "[t]hree minutes into the meeting, when [she] started to explain the whole

situation, everybody in the room got up and left room without saying one word." (Id.) The grievance was denied on August 9, (Compl. Ex. 82, last page), and the suspension was not further grieved to arbitration. (Compl. ¶ 45.)

Meanwhile, Von Maack's health continued to deteriorate. In late 2010, Von Maack told Rumore about her lung disease and asked him not to schedule her for duty in the sterile room on consecutive days, but Rumore refused, even though he had acceded to similar requests from other employees. (Compl. ¶ 31.) In December 2010, Von Maack was diagnosed with bronchiectasis and pneumonia. (Compl. ¶¶ 31, 36; Compl. Exs. 30, 32.) On July 19, 2011, with the help of a lawyer provided by 1199, Von Maack filed a worker's compensation claim. (Compl. ¶ 43.)

Von Maack's discharge, on August 11, 2011, was precipitated by an incident on July 30. (Compl. Ex. 40.) On that day, a Saturday, the pharmacy was understaffed, and Von Maack claims to have been too busy to accept a shipping delivery containing medications. (Compl. ¶ 9.5.9.) Despite the fact that accepting deliveries was a pharmacy technician's job, and that a technician and another pharmacist were present that day, Von Maack was blamed for the refusal, and for letting the delivery driver wander the pharmacy unsupervised in search of someone else to accept the delivery. (Id.; Compl. Ex. 6 p. 3.) Von Maack alleges that the technician who was present later admitted to her that she had set her up at Rumore's request. (Compl. ¶¶ 9.5.9, 57.) She also suggests that her firing was a "retaliatory act" (Compl. ¶ 53): on August 5, Von Maack had submitted a safety and health hazard notice to the Occupational Safety and Health Administration ("OSHA") about the conditions in the sterile room. (Compl. ¶ 50; Compl. Ex. 39.) On August 12, Von Maack filed a retaliatory termination complaint with OSHA. (Compl. ¶ 67.)

1199 grieved Von Maack's discharge to arbitration, which took place on April 11, 2012. (Compl. ¶ 62.) But Von Maack complains that, rather than representing her fairly, 1199 conspired with Wyckoff to "prearrange the arbitration." (Compl. ¶ 58.) She claims that she was told by 1199's lawyer not to say anything at the arbitration (Compl. ¶ 9.5.1), that 1199 turned away a coworker who was going to testify on her behalf (Compl. ¶ 9.5.2), that 1199 failed to use exculpatory evidence that she provided (Compl. ¶ 9.5.6), and that it failed to protest when Wyckoff introduced Von Maack's prior suspensions. (Compl. ¶ 9.5.7.) She also asserts that the arbitration took place much later than it should have under the terms of the CBA, resulting in her complaints with various federal agencies being time-barred. (Compl. ¶ 9.3.)

The arbitrator issued a decision on April 30, 2012. (Compl. Ex. 6.) He concluded that "[i]f [Von Maack] had a clean disciplinary record, then the circumstances that arose on July 30, 2011 would not justify terminating her employment," but that, since Von Maack was on notice that "further . . . recalcitrance could jeopardize her job," there was just cause for her discharge. (Id. pp. 18–19.)

Following the arbitration, Von Maack turned to federal and state agencies for help, but with limited success. OSHA does not appear to have acted on her complaints. (Compl. ¶¶ 73–79.) Charges filed with the National Labor Relations Board ("NLRB") against Wyckoff and 1199 were dismissed, and those dismissals were sustained on appeal. (Compl. ¶ 94.) Von Maack filed a complaint against 1199 with the New York State Division of Human Rights ("NYSDHR"), which was also dismissed (Compl. ¶ 117; Dorn Decl. Ex. H), and the dismissal of her Title VII claims was sustained by the Equal Employment Opportunity Commission ("EEOC"). (Compl. Ex. 1.) She has not been successful in obtaining worker's compensation for her lung disease. (Compl. ¶¶ 102–113.) She has succeeded, however, in obtaining

unemployment benefits.  Her right to these was affirmed on June 28, 2013 by the New York Unemployment Insurance Appeal Board, which described the incident that led to Von Maack's discharge as "an isolated instance of poor judgment."  (Compl. Ex. 4.)

On June 22, 2013, through counsel, Von Maack filed a complaint against Wyckoff in New York Supreme Court, alleging a violation of section 741 of the New York Labor Law, which prohibits retaliatory action against certain health employees who disclose practices that "constitute[] improper quality of patient care."[2]  N.Y. Lab. Law § 741(2)(a).  On March 13, 2014, the Supreme Court dismissed the complaint, concluding that Von Maack was not the type of employee covered by the statute.  Von Maack v. Wyckoff Heights Med. Ctr., 43 Misc. 3d 1206(A) (Sup. Ct., Kings Cnty. 2014).

Finally, on June 27, 2014, Von Maack commenced this action.  In her opposition to 1199's motion, she explains that she is proceeding pro se "on purpose," for fear that a lawyer "would keep [her] complaint very short, but distorted."  (Opp'n 3.)  1199 moved to dismiss on September 30, 2014.

LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted

---

[2] Von Maack alleges that as a precondition to filing this suit, she withdrew a second NYSDHR complaint, this one against Wyckoff.  (Compl. ¶ 119; Compl. Ex. 84.)

- 6 -

unlawfully." Id. In assessing the complaint, the district court must draw all reasonable inferences in favor of the non-movant. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action," however, are not entitled to any presumption of truth. Iqbal, 556 U.S. at 678.

Courts have an obligation to construe a complaint filed by a pro se plaintiff particularly liberally, conducting their examination with "special solicitude [and] interpreting the complaint to raise the strongest claims that it suggests." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).

DISCUSSION

I.   Duty of Fair Representation Claim

A union's duty of fair representation ("DFR") arises from its status as "exclusive bargaining representative" of employees in a bargaining unit. Vaca v. Sipes, 386 U.S. 171, 177 (1967). The DFR consists in an "obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Id. A union's breach of its DFR may render it liable under Title VII of the Civil Rights Act, which prohibits labor organizations from discriminating on the basis of (inter alia) race or national origin. Cooper v. Wyeth Ayerst Lederle, 106 F. Supp. 2d 479, 498 (S.D.N.Y. 2000) (citing Goodman v. Lukens Steel Co., 482 U.S. 656, 667–69 (1987)). Title VII provides a proper foundation for a DFR lawsuit when the plaintiff alleges that the union acted discriminatorily in failing to represent a member's interests. Id.

Von Maack's claims against 1199 are, in essence, that the Union did not represent her adequately in her dealings with Wyckoff, failing to put forward her complaints about health

conditions and bonuses, and failing properly to grieve her suspensions and termination.  In fact, she alleges that 1199 abandoned its DFR entirely by conspiring with Wyckoff to have her fired.  She claims that race-based discrimination was the moving force behind this breach of duty.  Her complaint closes with a twelve-page essay entitled "The Essence of Racial Discrimination by 1199" (Compl. pp. 64–75), in which she asserts that, "[a]part from a few non-black figurants, the core of the union is predominantly black" (Compl. p. 66), and that "[a]s a white minority within the union, [she] was not defended against a lawbreaking employer and racists from inside of the union." (Compl. p. 67.)

A Title VII plaintiff alleging a breach of a union's DFR must show that the union's actions were motivated by discriminatory animus.  Cooper, 106 F. Supp. 2d at 502; Morris v. Amalgamated Lithographers of Am., Local One, 994 F. Supp. 161, 170 (S.D.N.Y. 1998) (requiring a showing of animus in a case of alleged racial discrimination).  Although Von Maack claims that 1199 discriminated against her because she is white, she has failed to allege any circumstances plausibly giving rise to an inference of discrimination.  The 64 pages of Von Maack's complaint that precede the "Racial Discrimination" essay do not contain a single reference to Von Maack's racial background.  The essay makes assertions about the racial composition of 1199's membership based on Von Maack's "visual survey" from her visits to the Union's headquarters, (Compl. p. 66), and conclusory allegations that 1199's treatment of Von Maack was due to her race.  Von Maack does not identify any similarly-situated black union members whose grievances were processed in a more satisfactory manner.  See Jiggetts v. Allied Int'l Union, No. 07 Civ. 11572(JSR)(RLE), 2010 WL 2158331, at *4 (S.D.N.Y. Mar. 17, 2010) (recommending dismissal of Title VII DFR claim because the plaintiff failed to identify employees of another race who were treated differently), adopted, 2010 WL 2158322 (S.D.N.Y.

May 26, 2010); Nweke v. Prudential Ins. Co. of Am., 25 F. Supp. 2d 203, 223–24 (S.D.N.Y. 1998) (granting summary judgment to defendant union).  Nor does she give any examples of discriminatory comments or innuendo by union officials.  See Nweke, 25 F. Supp. 2d at 224.

The complaint also suggests that Von Maack was discriminated against on the basis of her national origin.  She refers to herself as an "accent-speaking female immigrant," (Compl. ¶ 18), and as a "small, sick, accent speaking woman," (Compl. p. 70), and she notes that one of Rumore's "privileged employees," Maria Esposito, was "American born."  (Compl. ¶ 38.) She never specifies what her national origin is, however, and apart from Esposito (who she alleges was the beneficiary of preferential treatment by Rumore, rather than by 1199), does not identify any American-born union members who were treated differently.  For these reasons, Von Maack has not plausibly alleged a Title VII claim.[3]

A union's breach of its DFR can also lead to liability under the Americans with Disabilities Act ("ADA").  The ADA makes it unlawful for an employer to fail to make a "reasonable accommodation" to the disability of an otherwise qualified individual.  42 U.S.C. § 12112(b)(5)(A).  A union may be held liable under an antidiscrimination statute if it fails to assist in the processing of a grievance grounded in an employer's underlying discrimination. Cooper, 106 F. Supp. 2d at 498.  Von Maack, then, appears to argue that Wyckoff discriminated against her on the basis of her lung disease by continuing to schedule her for consecutive shifts in the sterile room, and that 1199 refused to act on her repeated complaints about this problem. (See Opp'n 57.)  But the complaint fails to plausibly allege facts showing her entitlement to relief.  For instance, an ADA plaintiff must show that he or she suffers from a disability,

---

[3] Arguably, some of Von Maack's allegations of discrimination are separate from her DFR claims.  Specifically, she claims that 1199 discriminated against her in failing to offer her job referrals or supplemental income assistance after she was fired. (Compl. ¶¶ 9.1, 61; Compl. p. 69.)  Since Von Maack has failed to raise an inference of discrimination, however, these allegations also fail to state a Title VII claim.

McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009), which the ADA defines as an "impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Von Maack has not alleged facts showing that her lung disease substantially limits a major life activity. Moreover, she has not specifically alleged that, after Wyckoff denied her request for an accommodation, she asked 1199 to grieve that denial and 1199 refused. Consequently, Von Maack does not plausibly state a claim against 1199 under the ADA.

DFR claims that are not brought under anti-discrimination statutes are subject to a six-month limitations period, borrowed from section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc., 742 F.3d 42, 46 (2d Cir. 2014) (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 169 (1983)). "[T]he cause of action accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred." Id. (quoting Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 67 (2d Cir. 1995)).

None of Von Maack's claims, however, stem from events that occurred within the six months before Von Maack commenced this lawsuit. The most recent alleged breach of 1199's DFR occurred at the arbitration hearing. When the gravamen of a DFR claim is that a union failed to represent the plaintiff adequately during an arbitration, the claim accrues on the date of the award. Id. at 47. In Von Maack's case, that date was April 30, 2012—over two years before this lawsuit was filed. Von Maack's other allegations that could potentially support a DFR claim against 1199 accrued even earlier. Von Maack's freestanding DFR claim is thus dismissed as time-barred.[4]

---

[4] In her opposition, Von Maack responds to the argument that her complaint is time-barred by challenging the NLRB's rejection of her charge as untimely. (Opp'n 38–40.) But, even assuming that this was in fact the reason for the NLRB's decision not to issue a complaint, it is the timeliness of this complaint, rather than of the NLRB charge,

II.  Other Claims

The complaint also lists claims under a miscellany of federal and state provisions, none of which provide a proper basis for this lawsuit.[5] Under two of these, the Fair Labor Standards Act ("FLSA") and the Family and Medical Leave Act ("FMLA"), Wyckoff, rather than 1199, would have been the proper defendant.[6] The FLSA provisions relating to wages apply to employers, and not to unions. See 29 U.S.C. § 203(d) (defining "employer" to exclude labor organizations); McKoy v. Henderson, No. 05 Civ. 1535 DAB, 2007 WL 678727, at *8 (S.D.N.Y Mar. 5, 2007) (dismissing a FLSA claim against a union because the union was not the plaintiff's employer). Although the definition of "employer" in the FMLA is broader, see 29 U.S.C. § 2611(4)(A), a plaintiff in an FMLA action must nevertheless allege that the defendant "controlled in whole or in part Plaintiff's rights under the FMLA." Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011). Von Maack has not alleged that 1199 controlled her ability to take medical leave because of her lung disease.

Von Maack also asserts that 1199 violated the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), when it removed her name from the ballot in March 2010.

---

which is at issue here. In any event, this Court has no power to review a decision by the NLRB not to issue a complaint. Vaca, 386 U.S. at 182 (stating that "the [NLRB's] General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint").

[5] Von Maack's opposition adds claims under several other statutes, including the Racketeer Influenced and Corrupt Organizations Act, 42 U.S.C. § 1983, and the Equal Access to Justice Act. A plaintiff "may not amend his complaint to add new claims by raising them for the first time in his motion papers." Ifill v. N.Y. State Court Officers Ass'n, 655 F. Supp. 2d 382, 393 (S.D.N.Y. 2009) (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)). Accordingly, the Court will not consider them.

[6] Von Maack appears to be under the misapprehension that "1199 is not the only defendant of this complicated case. The case includes my former employer, Wyckoff Height [sic] Medical Center." (Opp'n 57.) As of now, only 1199, and not Wyckoff, is a party to this lawsuit, and the Court cannot "include Wyckoff in considerations" as Von Maack requests. (Opp'n 58.) Von Maack's belief that she needs a letter of permission from the EEOC to sue Wyckoff is incorrect: she may bring a lawsuit against Wyckoff without one. Any Title VII claims she may have against Wyckoff, however, must have been brought within 90 days of the EEOC's dismissal of Von Maack's charge against Wyckoff. 42 U.S.C. § 2000e-5(f)(1). Because that charge was dismissed on November 8, 2013 (Compl. Ex. 84), those claims would appear to be time-barred. The Court expresses no opinion on the merits of any other claims Von Maack may have against Wyckoff.

The LMRDA provides that "every member in good standing shall be eligible to be a candidate" in a union election. 29 U.S.C. § 481(e). There is no private right of action to enforce that provision. Instead, the aggrieved union member must file a complaint with the Secretary of Labor within one calendar month after exhausting internal remedies. 29 U.S.C. §§ 482(a), 483; Calhoon v. Harvey, 379 U.S. 134, 140 (1964) (stating that filing a complaint with the Secretary of Labor is "an exclusive method for protecting" election rights of union members). Von Maack does not claim to have done this, and consequently her LMRDA claim fails.[7]

Von Maack's claim under the Occupational Safety and Health Act fails for similar reasons. Even assuming that 1199 can be held liable for health and safety conditions at Wyckoff, there is no private right of action for employees to enforce the Act. Donovan v. Occupational Safety and Health Review Comm'n, 713 F.2d 918, 926 (2d Cir. 1983).

The Equal Pay Act, for its part, prohibits a labor organization from causing an employer to engage in sex-based wage discrimination. 29 U.S.C. § 206(d)(2). But the complaint, although it does allege that Wyckoff withheld wages from Von Maack (Compl. ¶ 14), provides no basis for inferring that this was due to Von Maack's sex. Nor does it contain any allegation that 1199 caused Wyckoff to withhold the wages.

The complaint lists a claim under 5 U.S.C. § 7134 and a regulation thereunder, 5 C.F.R. § 2425.6. These provisions relate to employees of the federal government, however, and are thus inapplicable to Von Maack.

---

[7] Von Maack's submission in opposition to the motion to dismiss also mentions section 501 the LMRDA, 29 U.S.C. §§ 501; and section 412, by which Von Maack presumably means section 102, 29 U.S.C. § 412. (Opp'n 55.) Section 501, however, relates to the fiduciary obligations of union officers to the union, rather to than to union members. Section 102 provides a right of action to members whose rights under section 101 were infringed, but Von Maack does not identify which of those rights she is claiming 1199 infringed.

Von Maack's claim under section 741 of the New York Labor Law is precisely the claim that was rejected in the New York Supreme Court proceeding.  Accordingly, it is barred by the Rooker–Feldman doctrine, which "provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts." Morrison v. City of N.Y., 591 F.3d 109, 112 (2d Cir. 2010).  The same is true for Von Maack's claim under the New York Workers' Compensation Law, which was rejected by the Workers' Compensation Board (Compl. Ex. 75) and is now apparently awaiting appeal.  (Opp'n 54.)  The Workers' Compensation claim is barred for the additional reason that only the Workers' Compensation Board has the authority to hear claims for compensation in the first instance. Powers v. Porcelain Insulator Corp., 285 N.Y. 54, 59 (1941).

Von Maack alleges violations of New York's health code and of Wyckoff's internal policy and procedure manual, but has not directed the Court to any provision creating a private right of action to enforce them.

Finally, the complaint alleges a breach of the CBA between 1199 and Wyckoff. Von Maack's submission in opposition to the motion specifies that the following provision of the CBA is the one at issue:

> The Employer, the Union, and the individual Employee shall cooperate in encouraging the maintenance of a safe and healthy work place.  The Employer shall comply with all Federal, State, and local laws, including recently adopted OSHA pathogen standards.  The Union shall agree to cooperate in encouraging such rules as necessary to comply with such law.

(Opp'n 51.)  To maintain a claim for breach of a CBA against a union separate from a DFR claim, a union member "must be able to point to language in the [CBA] specifically indicating an intent to create obligations enforceable against the union by the individual employees." United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362, 374 (1990).  Here, there is no

- 14 -

indication that the provision cited by Von Maack is a "promise . . . specifically made to, or enforceable by, individual employees." Id. at 375. Accordingly, this last claim must be dismissed as well.

CONCLUSION

    For the foregoing reasons, Wyckoff's motion to dismiss is GRANTED. Defendant's counsel is directed to provide the plaintiff with copies of any unreported decisions cited herein.

    SO ORDERED.

P. Kevin Castel<br>
United States District Judge

Dated: New York, New York<br>
    November 6, 2014